JOHN BURNSIDE, Respondent, *v.* EDWARD MATTHEWS, impleaded, etc., Appellant.

The fact that one domiciled in one of the late Confederate States during the war of the rebellion took no active part therein, and held no office or employment under the Confederate government, did not change his legal condition during the war as an alien enemy; and such a person had, during that period, no *status* in the courts of this State to enforce a contract against a citizen thereof.

Such a defence, however, is merely technical and dilatory, and to be effectual should have been pleaded specially and with certainty.

Where, in an action brought by a citizen of Louisiana against a citizen of this State during the war, no defence was interposed that at the time of the commencement of the action the plaintiff was an alien enemy, and where the trial took place after the termination of hostilities,—*Held*, that presenting the question at the end of the trial could not remedy the defect in pleading, and that a refusal of the court to submit the same to the jury was not error.

(Argued March 6, 1873; decided June term, 1873.

APPEAL from judgment of the General Term of the Supreme

Court in the first judicial district, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought against defendants, as members of the firm of Brander, Chambliss & Co., to recover upon the indorsements of that firm upon two promissory notes.

The copartnership was formed in March, 1861, having its place of business in New Orleans. The notes were indorsed by the defendant, Matthews, in the firm name on the 26th or 27th April, 1861.

Plaintiff was a resident of the city of New Orleans prior to and during the war. This action was commenced on the 29th March, 1864; it was tried in March, 1867.

Further facts appear in the opinion.

*John Sherwood* for the appellant. Plaintiff was a resident of Louisiana during the war, and had no *status* in the courts of this State. (*U. S.* v. *Grossmayer*, 9 Wall., 75; *U. S.* v. *Lane*, 8 id., 185; *Coppall* v. *Hall*, 7 id., 542; *Perkins* v. *Rogers*, 35 Ind., 124; *Sanderson* v. *Morgan*, 39 N. Y., 231; Act July 13, 1861; Proclamation May 12, 1862.) Matthews must be served with notice of non-payment before he can be held on his alleged contract of indorsement. (3 Kent's Com., 63, and authorities; Bailey on Bills, 285, chap. 7, § 7; Collyer on Part., §§ 544, 545; Chitty on Bills, 12th ed., 381 [339], citing *Nott* v. *Douman*, 6 La., 684; Pars. on Part., 1st ed., 197, note *u.*)

*Aug. F. Smith* for the respondent. The rebellion did not affect the partnership of Brander, Chambliss & Co. before August 16, 1861. (*McStea* v. *Matthews*.) Notice of protest served at the place of business of the firm was sufficient, although the firm was dissolved after the indorsement and after the maturity of the notes. (*Bk. of Utica* v. *Phillips*, 3 Wend., 408; Story on Notes, § 312; *Bk. of Geneva* v. *Howlett*, 4 Wend., 328, 331; *Coster* v. *Thomason*, 19 Ala., 717–721; *Brown* v. *Turner*, 15 id., 832; *Dabney* v. *Stidger*, 4 Sme. & Mars., 749; *Slocomb* v. *De Lizardi*, 21 La. An.,

355; *Dodge* v. *Kentucky Bk.*, 2 A. K. Marshall, 616; 1 Parsons on Notes and Bills, 502; Edwards on Bills, 632 and note; Byles on Bills, 216; 45 L. L., 226.)

Reynolds, C. In the case of *Hubbard* v. *Matthews* just decided,[*] we determine that a copartnership was formed on the 27th or 28th of March, 1861, having its place of business in New Orleans, under the name of Brander, Chambliss & Co., of which the defendant, Matthews, was a member, and which continued for a considerable time thereafter. In that case, we also decide that the firm before named, were duly charged as indorsers of the notes there in controversy, which bore date on the day the partnership was formed. As the facts of this case in respect to the two questions before stated are the same, the judgment must be affirmed, unless there are some other reasons requiring a different result.

In the case of Hubbard (*supra*), the notes were indorsed 'on the 27th or 28th day of March, 1861, at which time it is not pretended that any state of war existed between the United States and the Confederates, which had any legal effect on commercial relations. In the present case the notes were indorsed in the firm name of Brander, Chambliss & Co., and delivered to the plaintiff at New Orleans, on the 26th or 27th of April, 1861, when various indications of actual war had become apparent. A Confederate government had been organized of which the State of Louisiana was an apparent member. Fort Sumpter had been assaulted and taken; the port of New Orleans with others, had been put in a state of blockade, and various other acts had been done indicating that insurrection, rebellion and war, either in fact existed, or was impending. The question when, in fact, the war of the rebellion with the "Confederate States of America" which, legally affected commercial transactions began, has been considered by the Supreme Court of the United States and the courts of various States, and the conclusions are not altogether

[*] *Ante, p.* 43.

harmonious.   In *The Prize Cases* (2 Black. [U. S.], 635), the Supreme Court of the United States held that the war commenced when the ports of the Confederate States were blockaded by the naval power under the proclamation of the President of the United States, on the 19th of April, 1861, and all the subsequent decisions of that court have affirmed the same doctrine.   Such, also, was the effect of the determination of the late Court of Appeals in the case of *Swinnerton* v. *The Columbian Ins. Co.* (37 N. Y., 174.)   It is now, however, determined by the Court of Appeals as at present organized, in the case of *McStea* v. *Matthews* (50 N. Y., 166), that no such state of war existed as legally affected commercial interests, until the proclamation of the President of the 16th of August, 1861, forbidding further commercial intercourse made pursuant to the act of Congress of the thirteenth of July of that year.   Whatever individual opinions may be entertained upon this apparently vexed question, we have only to follow the decision in *McStea* v. *Matthews*, and say that so far, we find no reason for disturbing the judgment below.

The plaintiff is, however, assailed by another objection now to be considered.   This action was commenced on the 29th of March, 1864, and at that time it is not questioned that a state of legal war existed between the United States and the Confederates.   In the answer sworn to on the 2d of April, 1864, the defendant, Matthews, avers that about the 15th of April, 1861, the State of Louisiana seceding from the United States and war ensuing, that State including the city of New Orleans, was held and occupied by the enemy until about the 30th of April, 1862, and that the plaintiff as well as other parties to the transaction, except the defendant Matthews, were during the period aforesaid, enemies of the United States.   Upon this issue the trial was had at the New York Circuit in March, 1867, and the evidence of the plaintiff taken at New Orleans under a commission on the 11th of April, 1865, was read on his own behalf, and he testified that he had resided in New Orleans

about twenty-seven years, and had not been out of the State since March, 1861, and only out of the city of New Orleans occasionally, to visit his plantations about seventy-five miles distant. It is proper, also, to say that he also testified that he held no office and had no employment under the Confede- rate government, or of the State of Louisiana or of the city of New Orleans. At the close of the evidence on the part of the plaintiff, the counsel for the defendant moved for a nonsuit, which was denied. When the whole evidence in the case was closed, the motion for a nonsuit was renewed upon the ground, among others, that the plaintiff could not recover upon the evidence in the case, and the motion was again denied. Thereupon the judge was requested, among other things, to charge the jury " that the action by the plaintiff, Burnside, a resident of New Orleans, which was commenced in the month of March, 1864, cannot be main- tained against a resident of the city of New York, for the reason that Burnside has no *status* and can have no *status* until after the termination of the war, in the courts of the State of New York." This was refused and a verdict for the plaintiff directed. It appears to have been assumed all through the case, that the plaintiff was domiciled in New Orleans during the entire war of the rebellion, and the fact that he took no active part in the rebellion and held no office or employment under the Confederate government, does not in the least, change his legal condition during that period of time as an alien enemy of the United States. It is, however, very obvious that the answer does not interpose this defence as against the capacity of the plaintiff to sue when the action was commenced in March, 1864, even if it be set up at all in any proper form, and as the defence is merely technical and dilatory, growing out of a supposed temporary disability, it must to be effectual, be pleaded specially and with certainty to a particular intent. (1 Chitty Pl. [Springfield ed.], 234, 446, 448, 479; *Bell* v. *Chapman*, 10 J. R., 183.) Clearly this has not been done; and suggesting the supposed

difficulty at the end of the trial cannot remedy the defect in pleading.

If it be assumed that it was pleaded this objection might have prevailed. It is sufficient to say that the answer does not set up in any form by way of defence or otherwise, the fact that the plaintiff was, in March, 1864, an alien enemy of the United States, and the case was not tried upon any such issue. At the time of the trial the disability, if any, was removed, and we discover no reason for disturbing the judgment below, and it must be affirmed with costs.

All concur.

Judgment affirmed.